### 47642. BUTTS v. DEPARTMENT OF PUBLIC SAFETY.

BELL, Chief Judge. Appellant's driver's license was suspended for his refusal to take a blood or breath test under the Implied Consent Law. Ga. L. 1968, pp. 448, 452 (Code Ann. § 68-1625.1). At a hearing it was shown that after appellant's arrest in Columbus for driving while under the influence of intoxicants he was given an explanation of the Implied Consent Law. Appellant declined the breath test but requested a blood test. He was taken to a local hospital. At the hospital, appellant refused to "sign the forms for the blood test" and requested the presence of his doctor, who lives in Lumpkin, to withdraw the blood. Appellant was advised by the "medical staff" that he would have to use their facilities and their doctor. The appellant refused to consent to allow anyone present to draw the blood sample. Appellant testified that after learning that he could not have his own physician present to draw the blood or to call another local doctor that he didn't want "just some old practicing intern" to take his blood because he thought he might get hepatitis or some kind of disease; and that since he was advised that there was no one locally present who could analyze the blood there was no point in taking the blood test. There is no evidence in the record revealing the content of the hospital form that appellant refused to sign. On appeal to the superior court the order of suspension was affirmed. *Held:*

1. At the Department of Public Safety hearing, appellant did not place his refusal to submit on anything contained in the hospital form, the content of which is

unknown. No objection was made or issue raised at the agency hearing relative to the form. There is absolutely no evidence as to what the form contained. The argument was raised for the first time on appeal. Code Ann. § 3A-120 (c) specifically prohibits consideration of an objection by the courts on review unless the issue was urged before the agency.

2. The record shows that the refusal was based solely on the lack of anyone locally available to analyze the blood specimen. There is no requirement in the Implied Consent Law that there must be someone in the immediate local area licensed under the statute to give an analysis of blood. Nor does the party concerned have any right under the law to have his own physician draw the blood. His conduct shows nothing more than an unwillingness to submit to the blood test because of the lack of a local licensed analyst. The evidence authorizes the conclusion that appellant unjustifiably refused to consent and the judgment is affirmed.

*Judgment affirmed. Hall, P. J., Eberhardt, P. J., Pannell, Quillian, Clark and Stolz, JJ., concur. Deen and Evans, JJ., dissent.*

ARGUED NOVEMBER 6, 1972 — DECIDED MARCH 1, 1973 — REHEARING DENIED MARCH 14, 1973 — 

*Frank K. Martin,* for appellant.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Courtney Wilder Stanton, Daniel I. MacIntyre, Assistant Attorneys General,* for appellee.

EVANS, Judge, dissenting. The Department of Public Safety suspended the driver's license of L. E. Butts, Jr., because of his failure to take a blood test after being arrested for driving on the public highways while intoxicated. See Code Ann. § 68-1625.1 (Ga. L. 1968, pp.

448, 452). At the hearing conducted by the Department of Public Safety the only witness who testified against Butts was Officer M. D. Roller, a traffic officer, who testified that witness and another traffic officer by the name of J. T. Spencer, arrested Butts at 12:20 a. m. on February 5, 1972, while driving an automobile on the public highways; that his attention was first attracted to Butts because of the failure to dim his bright lights for approaching traffic, and he stopped the car and discovered that Butts was under the influence of an intoxicant. He testified that he explained the implied consent law to Butts and *"at that time he requested a blood test"*; that Butts did not wish to take the intoximeter test that we had at headquarters, so he was taken to the Medical Center.

Butts was within his rights under the law in asking for a blood test instead of an intoximeter (breath) test. See Code Ann. § 68-1625.1 (g).

The evidence in the transcript is as clear as the noon-day sun in showing that when Butts was taken to the Medical Center, the very first step that was taken was that those in authority there requested him to sign a certain form, and he refused to sign it; and that the Medical Center would not take a sample of his blood unless he did sign the form. There is absolutely no requirement of law that one who is to have his blood drawn in such cases must first sign a form for those who are going to draw the blood.

The fallacy of the position adopted by the majority opinion is best illustrated by quoting certain statements therefrom: The majority states: "At the Department of Public Safety hearing, the appellant did not place his refusal to submit on anything contained in the hospital form, the content of which is unknown . . . There is absolutely no evidence as to what the form contained." What difference does that make? Butts objected to signing a form, period. He did not have to show that the

form contained language objectionable to him or language that would injure him. However, is there any person so naive as to believe the Medical Center wanted Butts to sign a form that would *help* Butts and *injure* the Medical Center? No, indeed! The only plausible excuse for requiring him to sign a form was so it would take away some right that Butts had and grant some kind of protection or immunity to the Medical Center.

The majority opinion states: "No objection was made or issue raised at the agency hearing relative to the form . . . The argument was raised for the first time on appeal." The majority thus fails to grasp the significance of Butts calling for a hearing by the agency, and the law respecting such hearing. Butts called for the hearing and thereafter he was not required by law to file any pleading, contest, objections, or to raise any question at the hearing. He had no burden of any nature, but to the contrary the burden was on the Department of Public Safety to accord him a hearing, and at such hearing it had the burden of proving the law enforcement officer had reasonable cause to believe Butts was operating a car while intoxicated; that he was placed under arrest; *that he refused to submit to the test after being requested to do so by the officer;* and that he was told by the arresting officer that his driver's license would be suspended if he refused to submit to the test. See Code Ann. § 68-1625.1 (c). Upon an adverse determination by the Department of Public Safety, Butts had the right to appeal to the superior court, and from an adverse determination by the superior court, he had the right to appeal to this court. Upon such appeal he has the right to show that the Department of Public Safety's order is erroneous, for any reason which will show a failure to properly find against Butts on each of the four matters set forth above and as provided for in Code Ann. § 68-1625.1 (c). One of those matters which the Department of Public Safety had to show by evidence was that *Butts refused to submit to the*

*test (blood-test) after being requested so to do by the officer.*

The majority opinion states: "The record shows that the refusal was based solely on the lack of anyone locally available to analyze the blood specimen." This is not in accord with the record and the transcript. Let's put first things first. The very *first thing* that was done, according to the principal and only witness offered by the Department of Public Safety, M. D. Roller (the arresting officer), was that *the Medical Center insisted that Butts sign a form and that it would not draw his blood unless he signed the form.* It was not until this had transpired that Butts suggested he would like to have his own doctor or some other doctor known by him to perform the drawing of blood. The transcript shows the Department's witness, officer M. D. Roller, testified as follows: "We took him to the Medical Center where he refused to cooperate with the Medical Center staff, *he wouldn't sign the forms for the blood test;* requested his doctor who lives here in Lumpkin and he was told by the Medical Staff at the Center that he would have to use their facilities and their doctor and he refused." (Emphasis supplied.) (Tr. 7.)

Later, Officer Roller testified: "I was standing right there when the lady that is inside the Medical Center was taking the information from Mr. Butts. Asking his address... he wouldn't ... all he gave us was what was strictly on his driver's license ... *he was asked to sign a form ... a Medical Center form ... he refused to sign the form. They will not draw blood from any person unless they sign a form."* (Emphasis supplied.) (T. 10)

Later, in rebuttal, this same witness, Officer Roller, testified: "All I heard transact was that he was requested to take that test, that particular test that he wanted, *he would not sign the hospital form allowing their staff to do it.* He wanted his own doctor to do it and that's the reason he didn't have anything done about it." (Emphasis supplied.) (Tr. 17.)

It is quite clear that the defendant did not absolutely

refuse to take a blood test, but he was charged with being uncooperative in that *he would not sign a form* the hospital authorities placed in front of him.

The implied consent law (Code Ann. § 68-1625.1, supra) makes it mandatory upon the arresting officials to have the blood test taken when the motor vehicle operator demands it, but the law does not require him to sign any written forms, ostensibly to protect the hospital or medical center which performs this service.

As to Butts calling for his own doctor, Officer Roller explains this quite succinctly. After reciting the insistence of the Medical Center that Butts sign a form, without which they would not draw his blood (Tr. p. 10), then he was asked: "Q. Under these circumstances you said you did hear Mr. Butts ask for his local physician? A. That's correct." (Tr. 11)

Thus, it is seen that Butts did not ask for his own doctor in the first instance, but that *"under these circumstances"* (the circumstances of asking him to sign a form, without which the Medical Center would not draw his blood) he asked for his own doctor. It is important, quite important, to note that he did not ask for his own doctor *until after the Medical Center had insisted on his signing a form,* and had let it be known they would not draw his blood unless he did so.

The majority now contends that the recent case of *Dept. of Public Safety v. MacLafferty,* 230 Ga. 22 (195 SE2d 748) is controlling here. I do not agree. The *MacLafferty* case held that appellant did not exhaust all administrative remedies and did not complain to the agency of the specific matters sought to be litigated.

But in the case sub judice the hearing officer, on March 29, 1972, decided that all provisions of the Implied Consent Law had been complied with and upheld the license suspension. On the same date, the supervisor, acting for the director, approved the above findings and the license suspension. In the record it is shown (in an

unintelligible fashion) that some kind of review was made and denied on March 28, 1972, (one day before the hearing officer upheld the suspension of the license and one day before his decision was affirmed by the supervisor). The language in the record is "reviewed by C. J. R.—Leon Edgar Butts, Jr.—Denied. All provisions present." Appellant appealed to the court for a review of the adjudication against him on April 6, 1972. How then can it be contended by the majority that he failed to exhaust his administrative remedies?

Respecting the majority's contention that appellant failed to raise the question before the agency, on which he now appeals, his sole contention was that he had not violated the Implied Consent Law; that he had specifically requested and consented to the blood test; but that he was required to sign certain written forms before those in authority would give him the blood test, which forms he refused to sign. Thus, there can be no question but that he did raise the question before the agency on which he now appeals.

So, when first things are put first, and in proper sequence, the majority opinion is fallacious and without a proper premise upon which it may rest.

We do not feel that we need further justification for this dissent, but we wish to add one other thing. Much was said about not having a proper person present to *analyze* the blood after it was drawn. But the statute, in two separate places, requires that only specially qualified persons may *draw* the blood, these being limited to a licensed physician, registered nurse, medical examiner or ASCP certified or qualified medical or laboratory technician or aide. Code Ann. § 68-1625.1 (d, f). The agency hearing completely fell down in not proving that there was such qualified person present who could have legally drawn his blood. In this connection, a letter appears in the transcript from Dr. Larry B. Howard naming four persons who were qualified, but were

required to work under the direction of Dr. R. M. Shuffstall (Tr. p. 27) and letter from Frank K. Martin showing that Dr. Shuffstall had left the Medical Center several months prior to the date in question, to wit, February 5, 1972. (Tr. p. 26)

It has been held time without number that all statutes in derogation of the common law must be strictly construed. *Edmondson v. Dyson,* 7 Ga. 512, 515; *Foster v. Vickery,* 202 Ga. 55, 60 (42 SE2d 117). Here, the hospital sought to superimpose an additional requirement for taking the blood test which is not found in the statute. This the hospital was without authority to do.

It is my opinion that the trial court erred in holding the operator had refused to take the test; because this record plainly shows the hospital refused to give the test in the terms of the statute. I would therefore reverse the trial court in affirming the department's decision. I dissent from the majority opinion in this case.

I am authorized to state that Judge Deen joins in this dissent.